J-A19017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALEX T. BARNES, THOMAS A. BARNES AND CHRISTINE M. BARNES | : | No. 1467 MDA 2023 |
| | : | |
| v. | : | |
| | : | |
| STEVEN H. SHANNON, STEVE SHANNON TIRE COMPANY, INC., DAVID SHULTZ, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF PATRICIA SHULTZ, DONALD W. HUFNAGLE, SHARON A. HUFNAGLE, UGI UTILITIES, INC., PENRAC, LLC A/K/A ENTERPRISE FM TRUST A/K/A ENTERPRISE FLEET MANAGEMENT | : | |
| | : | |
| APPEAL OF:  DAVID SHULTZ, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF PATRICIA SHULTZ | : | |

Appeal from the Order Entered October 13, 2023
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  CV-2019-01813

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

MEMORANDUM BY LANE, J.:                      **FILED NOVEMBER 27, 2024**

---

* Former Justice specially assigned to the Superior Court.

David Schultz ("Schultz"), individually and as administrator of the Estate of Patricia Schultz ("decedent"), appeals from the order granting the motion for summary judgment filed by Motorists Mutual Insurance Company ("Motorists").[1] We affirm.

The relevant facts and procedural history underlying this insurance coverage dispute are as follows. Motorists provided commercial motor vehicle insurance coverage to Steve Shannon Tire Co. Inc. ("Shannon Tire") under policy number 33-293886-30E ("the Policy"). The Policy identified the "named insureds," as that term is employed throughout the Policy, as: Steve Shannon Tire Co. Inc.; Steve Shannon; Shannon Properties, LP; and Shannon Investments. *See* The Policy, Form IL 7007 (01-87). The Policy provided liability coverage for certain company vehicles owned, hired, or borrowed by a named insured. *See* The Policy, Form CA 005 (10-01), at 3 of 17. The Policy specified that "an insured" individual—for covered autos under the policy—includes the named insureds and "[a]nyone else while using with [a named insured's] permission a covered 'auto' [the named insureds] own, hire or borrow." *Id*.

Shannon Tire permitted store managers to use company vehicles; however, pursuant to its vehicle use policy, other employees, non-employees, and family members of managers were not permitted to use those vehicles

---

[1] None of the other individuals or entities identified in the caption is a party to the instant appeal.

for any reason. *See* N.T. (Deposition of Steve Shannon), 2/16/18, at 6-7. The vehicle use policy was orally communicated and was not memorialized in written form. *See id*. at 11-12. Nevertheless, all Shannon Tire employees were aware of the vehicle use policy, and the prohibition that only managers had the benefit of using company vehicles. *See id*. at 13. Shannon Tire did not have any procedures in place to monitor the use of company vehicles.

One of the vehicles covered by the Policy was a 2014 Dodge Journey ("the vehicle") which had been leased by Shannon Tire. *See id*. at 5. Shannon Tire permitted Thomas Barnes ("Barnes"), a manager at one of the Shannon Tire locations, to use the vehicle, and Barnes used the vehicle to travel to and from work. *See id*. at 6. Shannon Tire informed Barnes of the vehicle use policy and ensured that Barnes understood that only he could use the vehicle and that neither his wife nor son, Alec, could use the vehicle. *See id*. at 7-11.

On the night of June 21, 2017, while the vehicle was at the Barnes residence, Alec took the vehicle and was involved in an accident which resulted in the death of the decedent. At the time of the accident, Alec was driving under the influence ("DUI") and had a suspended driver's license. The day after the accident, Alec stated in a videotaped police interview that his father had given him permission to drive the vehicle on the night of the accident, as well as on prior occasions. Alec ultimately pleaded guilty to homicide by vehicle, DUI, and related offenses. Schultz then commenced a civil action for

wrongful death and survival against Alec and other defendants at docket CV 18-01-308 ("the underlying action").

Motorists then commenced the instant litigation, seeking a declaratory judgment that the Policy provides no liability coverage for the accident because Alec was not operating the vehicle with the permission of a named insured, as required by the Policy. During discovery, Schultz produced the videotaped police interview as evidence that Barnes had given Alec permission to use the vehicle on the night of the accident. Alec recanted that statement and testified that, on the night of the accident, he did not ask his father for permission to drive the vehicle. *See* N.T. (Deposition of Alec Barnes), 10/7/21, at 44-45, 46. Alec clarified that he initially told police at the scene of the accident that he did not have permission to use the vehicle, but later lied to police during the videotaped interview by stating that that he had been using the vehicle with his father's permission on the night of the accident and had done so with permission on prior occasions. *See id*. at 46-47. Alec further testified that prior to the accident, he had never driven the vehicle for personal purposes.[2] *See id*. at 44.

---

[2] Alec was briefly employed at Shannon Tire and testified that, during a brief period of employment between December 2015 and January 2016, he used the vehicle while at work but would do so only if something needed to be picked up and no one else was available, and only if he was specifically authorized by a manager to do so. *See* N.T. (Deposition of Alec Barnes), 10/7/21, at 30, 31-32.

Barnes testified to his understanding of the vehicle use policy, that he was the only individual permitted to use the vehicle, and that neither his wife nor Alec were permitted to use it. *See* N.T. (Deposition of Thomas Barnes), 2/16/18, at 8. Barnes further testified that he did not give Alec permission to use the vehicle on the night in question or at any other time, and to his knowledge, Alec had never used the car before the night of the accident. *See id*. at 10, 15, 19, 21. Steve Shannon testified that he never authorized Alec to use the vehicle, no named insured had ever given Alec permission to drive the vehicle, Barnes was not authorized to permit Alec to use the vehicle, and that if Barnes had given such permission to Alec, he was unauthorized to do so. *See* N.T. (Deposition of Steve Shannon), 7/19/23, at 19, 20. Shannon further testified that prior to the date of the accident, he was unaware of any instance in which Barnes told anyone that they could use the vehicle, and had no reason to believe that Barnes had ever told anyone that they could use the vehicle. *See id*. at 20.

Motorists filed a motion for summary judgment, which only Schultz opposed. The trial court conducted a hearing on the motion. On October 13, 2023, the trial court entered an opinion and order granting the motion and declaring that, pursuant to the terms of the Policy, Motorists had no obligation to provide liability coverage for the subject accident. In entering its ruling, the trial court determined that no issue of material fact existed as to whether Barnes had authority to grant Alec permission to drive the vehicle or whether

a named insured under the Policy impliedly gave Alec permission to use the vehicle on the night of the accident. Schultz filed a timely notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925.

Schultz raises the following issue for our review:

> Whether the trial court erred as a matter of law in holding that there was no evidence of record for determination by the finder of fact, upon which reasonable minds can differ, to support the conclusion that a named insured impliedly gave Alec . . . permission to operate the . . . vehicle at the time of the . . . collision, therefore finding as a matter of law that there was no express or implied permission to operate the vehicle which was responsible for the death of [decedent].

Schultz's Brief at 5 (unnecessary capitalization omitted).

Our standard of review of an order granting or denying summary judgment is well-settled:

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [**See**] Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**State Farm Mut. Auto. Ins. Co. v. Dooner**, 189 A.3d 479, 482 (Pa. Super. 2018); **see also Washington v. Baxter**, 719 A.2d 733, 737 (Pa. 1998) (holding that, in order to withstand a motion for summary judgment, a non-

moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor).

Additionally, we note that the interpretation of an insurance policy is a question of law. *See Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015). Consequently, our scope of review is plenary and our standard of review is *de novo*. *See id*. The task of interpreting an insurance contract is generally performed by the trial court rather than by the jury. *See id*.

Under an omnibus clause of an automobile insurance policy which designates as insured any person using the insured vehicle with the permission of the owner, the permission necessary to elevate the user to the status of an additional insured may be express or implied. *Fed. Kemper Ins. Co. v. Neary*, 530 A.2d 929, 931 (Pa. Super. 1987). Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced. *See id*. As this Court has explained:

> "[P]ermission" requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured. [T]he critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be a connection made with the named insured's own conduct; proof of acts, circumstances, and facts, such as the continued use of the

- 7 -

car, will be insufficient unless they attach themselves in some way to the acts of the named insured.

*Id*. (citations and some quotation marks omitted).

In the present matter, Schultz does not challenge the trial court's interpretation of the Policy, nor its determination that no issue of material fact existed as to whether Barnes had authority to grant Alec permission to drive the vehicle. Instead, the sole issue Schultz presents for our consideration is whether a genuine issue of material fact exists regarding the question of whether a named insured under the Policy expressly or impliedly gave Alec permission to use the vehicle on the night of the accident.

In advancing this argument, Schultz asserts that Barnes was provided with a company vehicle on the day he was hired by Shannon Tire, was expected to have that vehicle nearby, and was on call to address any issues that could arise. Schultz claims that this "initial permission was broad enough to allow . . . Barnes as the permissive user to permit a third party, here his son Alec . . . to use the vehicle." Schultz's Brief at 23. Schultz points to Alec's statements to police that his father gave him permission to use the vehicle on the night of the accident, as well as on prior occasions. Schultz further claims that Shannon Tire's "lack of a written policy, complete lack of supervision, oversight[,] and enforcement of the alleged verbal vehicle use policy, and . . . Barnes' permission for Alec . . . to use the subject vehicle on the night of [the accident] presents issues of material facts [*sic*] that must be determined by the finder of fact at trial . . .." *Id*. at 23-24.

Schultz further asserts that, in the underlying action, the trial court ruled that a material question of fact remained as to whether Barnes was acting within the scope of his employment when he allegedly gave Alec permission to use the vehicle. Based on that ruling in the underlying action, Schultz contends that "the [t]rial [c]ourt already found that based on said facts, a jury could conclude that . . . Shannon Tire['s] . . . failure to communicate a policy for vehicle use, coupled with a failure to ensure the vehicle was not being used in such a manner amounted to **tacit approval** of such uses." *Id*. at 26 (emphasis in original). Schultz therefore reasons, "it has already been determined that, if accepted as true, the record supports a finding that the named insured, Steve Shannon Tire Company, permitted and/or approved of uses such as Alec . . . on the night of [the accident]." *Id*.

The trial court considered Schultz' issue and determined that it lacked merit. The court reasoned:

> . . . Schultz argues that there is an issue of material fact concerning whether Alec . . . had permission to operate the . . . vehicle on the night of the accident. He points to (1) the conflicting testimony of Alec and . . . Barnes; (2) [Shannon Tire's] entrustment of the . . . vehicle to . . . Barnes within the scope of [his] employment with [Shannon Tire]; and (3) [Shannon Tire's] lack of a written vehicle use policy and complete lack of supervision, oversight[,] and enforcement of the vehicle use policy.
>
> . . . Schultz also refers the court to the opinion . . . issued . . . in the underlying action [wherein] the court found that disputed issues of material fact exist concerning whether . . . Barnes gave Alec . . . permission to operate the . . . vehicle on the night of the accident and, if so, whether [Barnes] was acting within the scope of his employment at the time. That finding is not determinative

here, as it speaks to the relationship between . . . Barnes and Alec . . . rather than to the contractual relationship between [Motorists] and the Company, who are the parties to the . . . Policy.

Ultimately, whether . . . Barnes gave Alec . . . permission to operate the . . . vehicle on the night of the accident and, if so, whether he was acting within the scope of his employment at the time have no bearing on and do[es] not alter the contractual relationship between [Shannon Tire] and [Motorists]. Admittedly, the resolution of these questions may impact whether [Shannon Tire] could be found to be liable to Shultz on a vicarious liability theory [in the underlying action], but it does not concern whether the terms of the [Policy] compel [Motorists] to indemnify [Shannon Tire] in the event a jury determines [Shannon Tire] is liable [in the underlying action].

. . . Shultz's argument seems to conflate [Shannon Tire's] possible liability [in the underlying action] with [Motorists'] requirement to provide coverage under the [Policy]. The only question that controls whether the [Policy] compels coverage is whether . . . Barnes had actual authority to grant Alec . . . permission to operate the . . . vehicle at the time of the accident. Because there is no evidence in the record that . . . Barnes had such authority from any named insured, there is no coverage under the . . . Policy for the accident.

* * * *

. . . Barnes testified that he was aware of [Shannon Tire's] policy . . . and knew that only he was permitted to use the . . . vehicle, that his family was not permitted to use it, and that he did not have authority to give any other person permission to use it. Steve Shannon confirmed in his testimony at a subsequent deposition that . . . Barnes did not have authority to allow any other person to use the . . . vehicle for non-work purposes. Steve Shannon further testified that he did not give Alec . . . permission to use the . . . vehicle on the night of the accident.

On the day after the accident, Alec . . . gave a statement to the . . . police. At that time, he stated that his father, . . . Barnes, gave him permission to use the . . . vehicle on the night of the accident. [Alec] further stated that he had used the . . . vehicle previously and had always asked for permission. [Alec] later recanted that testimony, however.

- 10 -

The only evidence in the record suggesting that Alec . . . had express permission to operate the . . . vehicle at the time of the accident is the statement that Alec . . . gave to the state police on the day after the accident.  As indicated above, however, Alec . . . later recanted that.  . . . Barnes testified that he did not give Alec . . . permission to operate the . . . vehicle on that night or at any other time, and there is no evidence that Steve Shannon gave such permission.

Assuming, *arguendo*, that . . . Barnes gave Alec . . . permission to operate the . . . vehicle, however, there is no evidence in the record to support an allegation that . . . Barnes had authority from a named insured to give such permission.  . . . Barnes is not a named insured under the . . . Policy, and all evidence in the record is that he was not authorized by any named insured to give Alec . . . permission to use the . . . vehicle.  Accordingly, there is no evidence in the record to indicate that Alec . . . had express permission from a named insured to operate the . . . vehicle.

* * * *

There is [also] no evidence in the record to support a finding of any relationship between any named insured and Alec . . . at the time of the accident.  . . .  Similarly, there is no evidence to suggest a course of conduct in which the parties have mutually acquiesced sufficient to support a finding that a named insured granted Alec . . . implied permission to operate the . . . vehicle at the time of the accident.  There is testimony in the record by Alec . . . that he may have operated the vehicle on multiple occasions, but that testimony is disputed and, if true, does not support a finding that a named insured granted Alec permission to do so.  As indicated above, there is no evidence to support a finding that . . . Barnes had the authority to grant Alec permission to use the . . . vehicle.  As such, there is no evidence to support a finding that a named insured impliedly gave Alec . . . permission to operate the . . . vehicle at the time of the accident.

Trial Court Opinion, 10/13/23, at 8-12 (footnotes and unnecessary capitalization omitted, paragraphs reordered).

Viewing the evidence of record in the light most favorable to Schultz, as the non-moving party, and resolving all doubts as to the existence of a genuine issue of material fact against Motorists, as the moving party, we conclude that the trial court did not err or abuse its discretion in entering summary judgment for Motorists. The sole issue raised by Schultz in this appeal is whether a question of material fact remained on the discrete question of whether a named insured either expressly or impliedly gave permission to Alec to use the vehicle on the night of the accident. As explained above, where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. *See Dooner*, 189 A.3d at 482. Instead, the non-moving party must adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof, and his failure to do so establishes the entitlement of the moving party to judgment as a matter of law. *Id*.

Here, Schultz failed to meet this burden. There is no evidence in the record that any name insured expressly provided permission to Alec to use the vehicle on the night of the accident. Indeed, Steve Shannon testified that he never authorized Alec to use the vehicle, and no named insured had ever given Alec permission to drive the vehicle. *See* N.T. (Deposition of Steve Shannon), 7/19/23, at 19, 20. With respect to implied permission, as noted above, permission cannot be implied from the mere possession and use of the automobile without the knowledge of the named insured. *See Neary*, 530

A.2d at 931. The instant record is also devoid of any evidence that a named insured was aware that Alec had used the vehicle prior to the night of the accident. Nor is there any evidence of record that a named insured was aware that Barnes had previously permitted anyone else to use the vehicle. Indeed, Shannon specifically testified that prior to the date of the accident, he was unaware of any instance in which Barnes told anyone that they could use the vehicle and had no reason to believe that Barnes had ever told anyone that they could use the vehicle. ***See id***. at 20.

Schultz was therefore required to present evidence that a named insured "said or did something that warranted the belief that the ensuing use was with [the named insured's] consent." ***See Neary***, 530 A.2d at 931 (requiring the non-moving party to present "something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile"). However, there is no evidence of record that any named insured affirmatively said or did anything which indicated either the knowledge that the vehicle was being used by someone other than Barnes, or acquiesced to such continued use of the vehicle. ***See id***. The fact that Shannon Tire's strict vehicle use policy was verbally communicated to its employees and was never reduced to writing is of no moment. Nor is the fact and that Shannon Tire did not have a system in place to ensure that its managers abided by the vehicle use policy. What was necessary to raise an issue of material fact was evidence that Shannon Tire was aware of Barnes' misuse of the vehicle use

policy and did nothing about it.  **See Beatty v. Hoff**, 114 A.2d 173, 175 (Pa. 1955) (declining to find implied permission when there was "no proof whatsoever that [the vehicle's] use on such few occasions (or on the night of the accident) was with the [named insured's] knowledge"); **see also Gorton v. Erie Ins. Exch.**, 141 A.3d 606 (Pa. Super. 2016) (unpublished memorandum at *7) (holding that where the named insured has no knowledge of the use, permission cannot be implied).[3]  As Schultz was unable to present any such evidence, his failure to do so established Motorists' entitlement to judgment as a matter of law.  **See Dooner**, 189 A.3d at 482.  Accordingly, we affirm the trial court's order granting Motorists' motion for summary judgment.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024

---

[3] Pursuant to Pa.R.A.P. 126(b), an unpublished or non-precedential decision of the Superior Court of Pennsylvania filed on or after May 1, 2019, may be cited for its persuasive value.