J-S02037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CARRIE BAILEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | No. 1481 EDA 2020 |
| PENNSYLVANIA | : | |

Appeal from the Order Entered June 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 191103241

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 26, 2021**

Appellant, Carrie Bailey, appeals from the trial court's June 25, 2020 order entering judgment in favor of Appellee, Hospital of the University of Pennsylvania ("Hospital"), and against Ms. Bailey, after it had granted Hospital's motion for judgment on the pleadings.  We affirm.

Ms. Bailey sued Hospital for negligence and negligent hiring following the purported mishandling of her medical records.  She alleged, *inter alia*, that, on or around June 25, 2019, her results from a June 20, 2019 blood test were sent to a doctor she did not know and had not authorized to receive such information.  **See** Amended Complaint, 1/6/20, at ¶¶ 4, 8.  Further, she averred that she and her own doctor "were unable to access the said record until after July 3, 2019 — nearly 2 weeks after the tests were taken and more than 8 days after their unauthorized release."  **Id.** at ¶ 28.

In support of her negligence claim against Hospital, Ms. Bailey specifically alleged the following:

35. [Ms. Bailey] and [Hospital] are doctor and patient and thus stand in a special relationship to each other.

36. [Hospital] has a common law duty (or the court should impose one) to safeguard and protect [Ms. Bailey's] health care [*sic*] information and to make [her] healthcare information accessible to [Ms. Bailey] and her doctor and [Hospital's] failure to do so amounted to ordinary negligence.

37. Electronic record collection and cyber hacking pose an increasing huge [*sic*] risk on society that private and confidential healthcare information will be exposed and negatively affect a growing number of Americans.

38. The consequences of imposing such a duty of care upon [Hospital] will be limited, and not broad-based, and will advance society's goal of ensuring confidentialit6y [*sic*] of medical records and enhance confidence in patients that their private information will be protected and not viewed by unauthorized persons. Imposing such a duty of care will also lead to a limited burden on [Hospital], as opposed to the extensive harm that will result from not imposing a duty.

39. It is also sound public policy to take all reasonable steps to safeguard health care [*sic*] information of patients from careless, reckless and reprehensible exposure and it will promote the privacy goal of [the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")[1]]; and the privacy goal of 28 Pa. Code § 115.27[,] which states:

"All records shall be treated as confidential. Only authori8zed [*sic*] personnel shall have access to the records. The written authorization of the patient shall be presented

---

[1] Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.). HIPAA "provides for monetary fines and various terms of imprisonment for the wrongful disclosure of individually identifiable health information." **Lykes v. Yates**, 77 A.3d 27, 31 (Pa. Super. 2013) (citation omitted).

and then maintained in the original records as authority for release of medical information outside the hospital[."[2]]

40. In transmitting [Ms. Bailey's] medical information to an unauthorized doctor whom [Ms. Bailey] does not know, [Hospital] deviated from the standard of care that a reasonable man of ordinary prudence would have exercised.

41. [Hospital's] lack of care in sending [Ms. Bailey's] medical records to an unauthorized person amounted to negligence and proximately caused the following physical injury to [Ms. Bailey,] causing [her] to spend and have to continue ot [sic] spend larges [sic] sums of money to alleviate:

a. [Ms. Bailey] suffered an increase in her hypertension;

b. [Ms. Bailey's] doctor prescribed an increase in [her] blood pressure medicine;

c. [Ms. Bailey's] doctor referred her to a heart doctor;

d. [Ms. Bailey] has poor sleep;

e. [Ms. Bailey] have had [sic] a decrease in exercise;

f. [Ms. Bailey] has gained weight;

g. [Ms. Bailey] has experience [sic] more fatigue and stress[,] resulting in poor blood pressure;

h. At the direction of her doctor, [Ms. Bailey] had to changed [sic] her diet[.]

_____

[2] Violations of Section 115.27 are remedied through 28 Pa. Code § 51.41, which provides:

(a) When appropriate, the Department [of Health and Human Services] will work with the health care facility to rectify a violation of this part.

(b) A health care facility that violates this part may be subject to sanctions by the Department, which include: [various penalties].

(c) A person who violates this part may be subject to a civil penalty, not to exceed $500 per day.

42. It is foreseeable that the above severe physical harm may result from the careless release of healthcare information to the wrong person, even if that person is a doctor and causing a protracted period to pass before a person could gain access to her own medical records.

Amended Complaint at ¶¶ 35-42.

Additionally, in support of her negligent hiring claim, Ms. Bailey averred

the following:

43. [Hospital] has a duty (or one should be imposed by the court) to exercise reasonable care in hiring competent employees to handle [Ms. Bailey's] records and to treat [Ms. Bailey] with professionalism and respect.

44. This duty arises from the special relationship that exists between [Ms. Bailey] and [Hospital] as doctor and patient.

45. The incompetent placing of [Ms. Bailey's] medical records in their wrong file, and sending of those records to an authorized [*sic*] doctor and not to [Ms. Bailey] would have been averted or avoided along with the injury to [Ms. Bailey] if such a duty would have been followed or been court imposed.

46. [Hospital] has an important role of social utility in providing healthcare services to the community and providing competent staffing in furtherance of those services.

47. This social utility is seriously undermined by the admission that staff placed another patient's records in [Ms. Bailey's] file, sent [her] records to an unauthorized person and treated [Ms. Bailey] with hostility when [she] tried to get a hard copy of her record.

48. The nature of the risk imposed involve mix-ups in patients' records and barriers in patients' ability to receive their records and the foreseeable harm to [Ms. Bailey] involve [*sic*] a worsening of [her] already precarious health condition and problems with her blood pressure and heart from a delay in her doctor['s] being able to consult her record and added stress from the rude and unprofessional treatment of employees.

49. There is virtually no negative consequences of imposing such a duty on [Hospital] and the public interest in quality healthcare

and improving the handling of medical records and patient-doctor communication will be greatly enhanced by imposing such a duty.

50. [Hospital] has breached this duty in hiring employees who "miss-scanned" and placed someone else's record in [Ms. Bailey's] medical file, in sending that file to an unauthorized person, in taking too long to correct the mistake and in treating [Ms. Bailey] rudely and unprofessionally.

51. These employees were in a master-servant relationship with [Hospital] at the time but were acting outside the scope of their employment and not in furtherance of the master's business when they committed the negligent acts.

*Id.* at ¶¶ 43-51. As a result, Ms. Bailey stated she has suffered physical injuries. *Id.* at ¶ 52 (reiterating the physical injuries mentioned in paragraph 41 of the Amended Complaint, *supra*).

Hospital subsequently filed an answer with new matter, and Ms. Bailey filed a reply to Hospital's new matter. Hospital then filed a motion for judgment on the pleadings. Therein, Hospital first argued that Ms. Bailey lacked standing to bring any claim arising from the unauthorized disclosure of her protected health information, noting that "multiple federal courts have held that HIPAA does not create a private cause of action[,]" and that, "[s]imilarly, there is no express right of action granted by 28 Pa. Code § 115.27." Hospital's Motion for Judgment on Pleadings, 3/2/20, at ¶¶ 33, 34. Second, Hospital asserted that, "even if this court can consider [Ms. Bailey's] claim, [she] cannot recover against [Hospital] under *respondeat superior* since the negligent actions of [Hospital's] agents, servants and employees are alleged to have occurred outside the course and scope of their employment." *Id.* at Part B. (unnecessary emphasis and capitalization omitted); *see also*

*id.* at ¶ 43 ("Yet [Ms. Bailey] has expressly pled that the negligent acts performed by [Hospital's] employees were <u>outside</u> the scope of their employment and <u>were not</u> in furtherance of the master's business.") (emphasis in original; citing Ms. Bailey's Amended Complaint at ¶ 51).

Thereafter, Ms. Bailey filed a brief in opposition. She stated, without citing to any relevant authority, that Hospital "has a common law duty (or the court should impose one) to safeguard and protect [her] health care [*sic*] information and to make [her] healthcare information accessible to [Ms. Bailey] and her doctor. [Hospital's] failure to do so amounted to ordinary negligence." Ms. Bailey's Brief in Opposition, 3/25/20, at 2 (citation to complaint omitted). She explained that she agrees with Hospital that "there is no private right of action under HIPAA and no expressed right of action under 28 Pa. Code § 115.27[,]" but says she "brought her claims in the Amended Complaint under neither[,]" and only mentioned them in reference to their policy goals. *Id.* at 5. She also contended that Hospital failed to show that HIPAA pre-empts the state common law as to deprive her of standing. *Id.* at 7. Further, with respect to her negligent hiring claim, she said that Hospital could still be liable, even though its employees were acting outside the scope of their employment, under Section 317 of the Restatement (Second) of Torts, which we discuss further *infra*. ***See id.*** at 4-5.

Hospital then filed a reply in support of its motion for judgment on the pleadings. There, Hospital observed that Ms. Bailey tacitly admitted that no common law duty to safeguard her healthcare information exists and that the

duty she seeks is already imposed on Hospital by statute and regulation. *See* Hospital's Reply, 3/31/20, at 7. It also noted that our Supreme Court "has expressed its reluctance to impose new affirmative duties through the extension of common law particularly where tried and true measures exist." *Id.* at 7-8 (citations omitted). In addition, concerning Ms. Bailey's negligent hiring claim, Hospital asserted that Section 317 "requires knowledge on the part of the master such that it either knew or should have known of the necessity to control the servant." *Id.* at 15 (citation omitted). It claimed that "[a] thorough reading of [Ms. Bailey's] [a]mended [c]omplaint fails to identify any specific allegation which avers that [Hospital] either knew or should have known of some propensity of each alleged servant that necessitated heightened scrutiny in [either the] hiring or supervision of the employee." *Id.*

Ms. Bailey subsequently filed a sur-reply. She reiterated that Hospital failed to show how Pennsylvania's law of negligence is pre-empted by HIPAA. Ms. Bailey's Sur-Reply, 4/13/20, at 2. Regarding her negligent hiring claim, Ms. Bailey stated that there "are questions of fact that need to go to the jury along with questions surrounding the training of [Hospital's] workers and how and to what extent was [Ms. Bailey's] record wrongfully disseminated to persons without authority and the facts and foreseeability of [Hospital's] actions and how they would effect [*sic*] [Ms. Bailey's] injuries." *Id.* at 6.

After considering the parties' filings, the trial court issued an order granting Hospital's motion for judgment on the pleadings and dismissing Ms. Bailey's amended complaint. Thereafter, the trial court entered judgment in

favor of Hospital and against Ms. Bailey, and Ms. Bailey filed a timely notice of appeal. The trial court directed her to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and she timely complied. Subsequently, the trial court issued a Rule 1925(a) opinion, explaining that it "concluded that the Hospital owed no actionable duty to Ms. Bailey and Ms. Bailey did not allege sufficient facts supporting her negligent hiring claim." Trial Court Opinion ("TCO"), 10/20/20, at 1.

Presently, Ms. Bailey raises two issues for our review:

1. Did the trial court err in dismissing a negligence action against [Hospital] for an unauthorized release of [Ms. Bailey's] medical records because the duty allegedly owed [to Ms. Bailey] was also a duty imposed by HIPAA to which there is no private right of action?

2. Where a 2-count negligence claim pleads duty, breach, proximate cause, damages and foreseeability and a special relationship between the plaintiff and the employer, and a motion for judgment on the pleadings is filed prior to discovery, was it error for the trial court to dismiss the negligent hiring count because there was no allegation that the employer had knowledge of the same kind of prior wrongs allegedly committed by an employee against [the] plaintiff and because the other claim did not allege the accused employees acted within the scope of their authority and in furtherance of the employer's business?

Ms. Bailey's Brief at viii.

Initially, we note our standard of review for judgment on the pleadings:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015) (citation omitted).

## First Issue

In Ms. Bailey's first issue, she argues that the trial court erred "in dismissing a negligence action against [Hospital] for an unauthorized release of [Ms. Bailey's] medical records because the duty allegedly owed [to Ms. Bailey] was also a duty imposed by HIPAA to which there is no private right of action[.]" Ms. Bailey's Brief at viii. Ms. Bailey says that "[c]learly patients have an interest in avoiding disclosure of personal matters[,]" *id.* at 7, and claims that "[i]t is equally clear that healthcare facilities have a duty to protect their patients' confidential information." *Id.* at 8. To support that a common law duty to protect patients' confidential information exists, she cites to *Moses v. McWilliams*, 549 A.2d 950 (Pa. Super. 1988), asserting that the *Moses* Court "ruled that a patient does have a right to confidentiality but that right is less than absolute…." Ms. Bailey's Brief at 10. Ms. Bailey insists that the trial court dismissed her negligence claim "simply because the same acts

… [she] seek[s] to enforce against [Hospital] are prohibited by HIPAA[,]" and contends that "HIPAA does not pre-empt all state laws[.]" *Id.* at 10, 11.

Here, in addressing Ms. Bailey's negligence claim, the trial court reasoned:

> To state a negligence claim, a plaintiff must establish that (i) the defendant owed the plaintiff a duty of care; (ii) the defendant breached the duty of care; (iii) the breach resulted in the plaintiff's injury and (iv) the plaintiff suffered actual loss or damage.
>
> Even assuming that Ms. Bailey's allegations are true, as the [c]ourt must do at this stage of the proceedings, the duty Ms. Bailey alleges … Hospital owed her is a statutory creation of HIPAA and not actionable. Ms. Bailey alleges that her medical information is identified health information under HIPAA. Ms. Bailey concedes that HIPAA does not create a private right of action to enforce improper disclosure. Thus, in pleading her negligence claim, Ms. Bailey is attempting to thread an impossible needle. She seeks to have this [c]ourt impose a common law duty on … Hospital regarding disclosure of medical information. But the very disclosure requirements she claims were violated are statutorily created by and covered under HIPAA, and she concedes that there is no private right of action to enforce HIPAA. To get around this hurdle, Ms. Bailey seeks to convert HIPAA's disclosure requirements into a common law duty.
>
> Ms. Bailey avers that the court should impose a duty on healthcare providers to protect healthcare information. She further alleges that imposing the duty will "promote the privacy goal of HIPAA." Ms. Bailey's [r]esponse to the [m]otion for [j]udgment on the [p]leadings notes that the [a]mended [c]omplaint's inclusion and citation to HIPAA was done as a "standard to gage [*sic*] [Hospital's] duties and the reasonableness of its action and as [an] example of how this action against [Hospital] promotes the policy goals of HIPAA and 28 Pa. Code § 115.27." Ms. Bailey's [Rule] 1925(b) [s]tatement similarly states that she only "mentions" HIPAA "to enunciate the standard of care and policy goals these laws already apply to [Hospital]." Because HIPAA does not confer a private right of action, HIPAA cannot be the source of the duty supposedly owed to Ms. Bailey.

> ***In any negligence action, the complaint must state a duty
> of care owed by the defendant to the plaintiff and allege
> facts that would demonstrate the defendant's breach of
> that duty. Ms. Bailey fails to identify any other source of a
> duty of care … Hospital owed to her. In the absence of an
> actionable duty, there can be no negligence claim.*** Thus,
> because Ms. Bailey has not stated a negligence claim, the [c]ourt
> granted … Hospital's motion and entered judgment in its favor on
> Count I.

TCO at 3-4 (internal citations and footnote omitted; some brackets and emphasis added).

We agree with the trial court that, when responding to Hospital's motion for judgment on the pleadings below, Ms. Bailey failed to sufficiently identify a source of a duty of care owed to her, aside from HIPAA and 28 Pa. Code § 115.27. It is well-established that the existence of a duty is a question of law. ***Walters v. UPMC Presbyterian Shadyside***, 187 A.3d 214, 221 (Pa. 2018). Nevertheless, Ms. Bailey does not point us to where in her response and sur-reply to Hospital's motion for judgment on the pleadings she cited case law establishing that a common law duty exists, or where she addressed — and applied — the relevant authority for determining if a court should impose a previously unrecognized duty of care. ***See*** Pa.R.A.P. 2119(e); Pa.R.A.P. 302(a); ***Althaus ex rel. Althaus v. Cohen***, 756 A.2d 1166, 1169 (Pa. 2000) ("The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public

interest in the proposed solution."); *see also Walters*, 187 A.3d at 222 (explaining that the Court relies upon the *Althaus* factors to assist it in identifying a previously unrecognized duty) (citation omitted). Further, our own review of Ms. Bailey's filings uncovers no such references accompanied by meaningful argument.[3], [4]

Given Ms. Bailey's undeveloped arguments below concerning any common law duty, we agree with the trial court that Hospital is entitled to judgment as a matter of law on this issue. Ms. Bailey did not demonstrate that a common law duty exists, or should exist, to support her negligence cause of action.[5] As a result, based on the arguments before it, the trial court

_____

[3] Ms. Bailey cites to Pennsylvania case law purportedly establishing a common law duty to protect patients' confidential information (namely, *Moses*) for the first time in her appellate brief.

[4] We recognize that Ms. Bailey made some allegations in her complaint concerning the need for, and consequences of, imposing a duty on Hospital. For example, she alleged that "[e]lectronic record collection and cyber hacking pose an increasing huge [*sic*] risk on society that private and confidential healthcare information will be exposed[,]" and that "[t]he consequences of imposing … a duty of care upon [Hospital] will be limited, and not broad-based…." Amended Complaint at ¶¶ 37, 38. However, these statements are very general and vague, and do little to help establish that a duty of care should be imposed on Hospital.

[5] Ms. Bailey's appellate brief also contains a meager analysis of this issue. Although Ms. Bailey cites to *Moses* in her appellate brief to support the existence of a common law duty, the *Moses* Court discerned that the plaintiff in that matter failed to state a cause of action for breach of confidentiality under the facts of that case. *Moses*, 549 A.2d at 953. Moreover, Ms. Bailey still does not discuss, or meaningfully apply, any authority relating to how a court determines whether to impose a previously unrecognized duty of care. *See* Ms. Bailey's Brief at 7-10.

reasonably concluded that Ms. Bailey "fails to identify any other source of a duty of care [besides HIPAA and 28 Pa. Code. § 115.27] that … Hospital owed to her. In the absence of an actionable duty, there can be no negligence claim." TCO at 4. **See also id.** at 1 ("The [c]ourt concluded that the Hospital owed no actionable duty to Ms. Bailey…."). Thus, Ms. Bailey's first issue warrants no relief.[6]

## Second Issue

We next turn to Ms. Bailey's second issue. Ms. Bailey argues that the trial court erred in dismissing both counts of her complaint because "Count I of the [a]mended [c]omplaint sufficiently pled negligence of employees within the scope of their employment and Count II sufficiently pled negligent hiring that was foreseeable and involved a special relationship between [Ms.] Bailey and [Hospital]." Ms. Bailey's Brief at 20. We disagree.

First, with respect to Ms. Bailey's claim that Count I of her complaint sufficiently pled that the employees acted negligently within the scope of their employment, we have already determined that she failed to establish any actionable duty that Hospital or its employees owed to her within the scope of their employment. **Accord** TCO at 6 (determining that Ms. Bailey did not present "any actionable duty … Hospital or its employees, acting within the

---

[6] Though we determine that Ms. Bailey has not demonstrated that a common law duty exists — or should be imposed — in this case, we in no way mean to foreclose the possibility that another party in the future may convince us to recognize such a duty.

scope of their employment, owed to her"). Therefore, this argument lacks merit.

Second, regarding her negligent hiring claim in Count II of her complaint, Ms. Bailey contends that she sufficiently pled negligent hiring because she pled foreseeability and a special relationship between Ms. Bailey and Hospital. Ms. Bailey's Brief at 15. Problematically, though, she ostensibly advances her negligent hiring claim under Section 317 of the Restatement (Second) of Torts. *See id.* at 16 ("Count II states a key element of a negligent hiring claim under Section 317 of the Restatement Second of Torts – that the employees were acting outside of the scope of their employment and not in furtherance if [*sic*] the employer's business."); *see id.* at 17 (discussing Section 317).[7] Section 317 provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant

---

[7] To the extent Ms. Bailey brings her negligent hiring claim pursuant to a legal theory other than Section 317, we deem such claims too unclear and undeveloped to address, and therefore waived. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. … This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.") (citations omitted).

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) **knows or should know of the necessity and opportunity for exercising such control.**

RESTATEMENT (SECOND) OF TORTS § 317 (1965) (emphasis added).

Comment c to Section 317 elaborates:

*c. Retention in employment of servants known to misconduct themselves*. There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. **Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others.** This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which **knows** that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices.

RESTATEMENT (SECOND) OF TORTS § 317 cmt. c (1965) (emphasis added).

Accordingly, Section 317 explicitly requires that the master knew, or should have known, of the necessity for controlling his or her servant, and Ms. Bailey acknowledges that she must prove such knowledge. **See** Ms. Bailey's Brief at 15 (conceding that "it is true[] employer knowledge must be proven

at trial"); *id.* at 17 ("What the employer knew or should have known is a question of evidence. It's a thing that Ms. Bailey has to prove at trial."). Nevertheless, she failed to plead that Hospital knew or should have known of its need to control the employees who allegedly mishandled her test results and treated her with hostility. Merely pleading foreseeability and a special relationship are not sufficient to sustain Ms. Bailey's cause of action under Section 317. *See Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 666 (Pa. Super. 2010) ("Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim.") (citation omitted). Accordingly, we agree with the trial court that Ms. Bailey failed to state a claim for negligent hiring pursuant to Section 317.

Order affirmed.

Judge Kunselman joins this memorandum.

Judge Nichols files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2021