*1100
 
 Opinion by
 

 Judge TAUBMAN.
 

 In this action concerning insurance premiums for newly acquired vehicles, plaintiffs, Sean Anglum and Gwen Anglum, on behalf of themselves and all others similarly situated, appeal the judgment of dismissal entered in favor of defendant, USAA Property and Casualty Insurance Company (USAA). We reverse and remand for further proceedings.
 

 The Anglums were insured under a USAA automobile policy when on separate occasions they acquired two vehicles other than those named in the policy. Although one vehicle was a replacement vehicle and one was an additional new vehicle, both vehicles were "newly acquired vehicles" under the terms of the policy. Less than thirty days after the Anglums acquired each vehicle, they notified USAA of the acquisition. USAA then increased the Anglums' premium for the replacement vehicle and added a premium for the additional vehicle from the dates of their acquisition.
 

 Based on USAA's assessment of an additional premium from the acquisition dates, rather than the end of the thirty-day period after acquisition within which the newly acquired vehicle could be added to the USAA policy or covered through another insurer, the Anglums brought this action against USAA. They alleged claims for breach of contract, violation of the Colorado Consumer Protection Act, breach of the covenant of good faith and fair dealing, and declaratory relief. USAA moved to dismiss for failure to state a claim upon which relief can be granted, arguing that the policy permitted the additional premiums. After a period of limited discovery and the submission of supplemental briefs, the trial court entered summary judgment in favor of USAA. This appeal followed.
 

 I. Standard of Review
 

 Because the parties submitted materials outside the pleadings, including affidavits and contracts, which the trial court considered, it properly converted USAAs motion to dismiss into a motion for summary judgment. See Busse v. City of Golden, 73 P.3d 660, 665 (Colo.2008). Therefore, we will review the trial court's judgment accordingly.
 

 Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c).
 

 Appellate courts review a trial courts order granting a motion for summary judgment de novo, because, as here, the controlling facts are not in dispute, and the judgment is a ruling of law. See Cooper v. Aspen Skiing Co., 48 P.3d 1229 (Colo.2002); Sulca v. Allstate Ins. Co., 77 P.3d 897 (Colo.App.2003).
 

 II. Policy Interpretation
 

 The Anglums contend that their policy provided automatic coverage at no additional charge for thirty days from the dates they acquired the new vehicles, or until they insured the new vehicles with a different company, whichever occurred first. Therefore, because they were charged additional premiums beginning on the dates of acquisition, they assert that USAA overcharged them. To the extent the Anglums were charged an additional premium from the dates of acquisition until they notified USAA of the new vehicles and the modification of the policy to include those vehicles, we agree.
 

 The interpretation of an insurance contract and the determination whether that contract is ambiguous are questions of law that we review de novo. TerraMatrix, Inc. v. U.S. Fire Ins. Co., 989 P.2d 483, 486 (Colo.App.1997).
 

 We will enforce a policy as written, unless the policy language is ambiguous. State Farm Mut. Auto. Ins. Co. v. Stein, 940 P.2d 384, 887 (Colo.1997). Thus, we may not look beyond the plain words of an insurance policy to interpret it based on the parties underlying intent unless the policy terms are ambiguous or are used in a special or technical sense not defined in the policy. TerraMatrix, Inc. v. U.S. Fire Ins. Co., supra.
 

 A provision is ambiguous when it reasonably is susceptible of more than one meaning. The fact that the parties disagree about the meaning of a provision does not
 
 *1101
 
 establish ambiguity. TerraMatrix, Inc. v. U.S. Fire Ins. Co., supra. An ambiguous policy must be construed against the insurer and in favor of providing coverage to the insured. Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 618 (Colo.1999).
 

 Because an insurance policy is often imposed on a take-it-or-leave-it basis, a reviewing court assumes a heightened responsibility in reviewing insurance policy terms to ensure that they comply with public policy and principles of fairness. See Thompson v. Maryland Cas. Co., 84 P.3d 496, 501-02 (Colo.2004)(quoting Huizar v. Allstate Ins. Co., 952 P.2d 342, 344 (Colo.1998)).
 

 The rationale for automatic coverage clauses in automobile insurance policies is to meet the need to maintain insurance coverage in the situation arising from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of their policies. 8 Lee R. Russ Thomas F. Segalla, Couch on Insurance 117:2 (8d ed.2008).
 

 In its definitions section, the Ang-lums' policy defined a "covered auto" to include the following:
 

 1. Any vehicle shown in the Declarations.
 

 2. Any of the following types of vehicles acquired by you or a family member during the policy period, beginning on the date you or a family member becomes the owner, but only if no other insurance policy provides coverage for such vehicle:
 

 a. A private passenger auto;
 

 b. A pickup or van; or
 

 c. A miscellaneous vehicle not used in any business or occupation.
 

 For such newly acquired vehicles, we will automatically provide the broadest coverages as are provided for any vehicle shown in the Declarations. ... However, we will not provide any coverage for more than 80 days after the date you or a family member becomes the owner of the vehicle. If you wish to continue any coverage beyond the 30-day period, you must request it prior to the end of the 30-day period.
 

 The Anglums' policy further provided for adjustment of the premium for changes in risk exposure:
 

 CHANGES
 

 A. The premium is based on information we have received from you and other sources. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes, or is incorrect or incomplete, we may adjust your premiums accordingly during the policy period.
 

 B. If, during the policy period, the risk exposure changes for any of the following reasons, the necessary premium adjustments will be made effective the date of change in exposure. You agree to give us notice of such exposure changes as soon as is reasonably possible:
 

 1. Change in location where any vehicle is garaged.
 

 2. Change, addition, or deletion relating to the description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.
 

 8. Replacement, deletion, or addition of any vehicles You must request coverage for a newly acquired vehicle within 30 days from the date the vehicle is acquired if you wish to continue any coverage. See DEFINITIONS-your covered auto.
 

 4. Change, addition, or deletion relating to the date of birth, marital status, or driving record of any operator.
 

 5. Addition or deletion of an operator.
 

 6. Change, addition, or deletion of any coverage or limits.
 

 C. We will make any caleulations or adjustments of your premium using the applicable rules, rate, and forms as of the effective date of the change.
 

 (Emphasis added.)
 

 We conclude the policy is ambiguous as to the effective date of a change in exposure resulting from the acquisition of a new vehicle. On the one hand, as USAA argues, the
 
 *1102
 
 changes section of the policy might indicate that when a policyholder acquires a new vehicle, the "effective date of the change" in exposure is the date of acquisition. On the other hand, as more fully explained below, the language of the policy would lead a reasonable policyholder to conclude that the "effective date of the change" in exposure does not occur until thirty days from the date of acquisition.
 

 We first note that the Anglums' initial premium paid for coverage to the extent provided by the terms of the policy. See Shelter Gen. Ins. Co. v. Coppola, 824 P.2d 58, 59 (Colo.App.1991)("An insurance contract is formed when the insurer agrees to provide coverage in exchange for consideration consisting of the premium."), rev'd sub nom. Simon v. Shelter Gen. Ins. Co., 842 P.2d 286 (Colo.1992).
 

 We begin our interpretation of the policy with the definitions. According to the plain meaning of the policy, USAA included in the policy's "covered auto" definition up to thirty days of coverage for any "newly acquired vehicle." Additionally, under the terms of this policy, once the policyholder notifies USAA that a new vehicle has been acquired and the policy is modified to include that vehicle, the vehicle is no longer a "newly acquired vehicle," but then becomes a "vehicle shown in the Declarations" of the policy and the automatic coverage provision no longer applies. See Beck v. Aetna Cas. & Sur. Co., 88 Colo.App. 77, 558 P.2d 397 (1976)(when the insured applied for specific coverage, terms and provisions of the automatic insurance clause or newly acquired automobile clause were no longer applicable to the automobile). Similarly, the automatic coverage provision would cease to apply within the 30-day period when the policyholder obtains coverage for the newly acquired vehicle with another insurer.
 

 However, the policy also allowed for adJustment of the premium during the policy period to account for "change in exposure." The policy provided that "premium adjustments will be made effective the date of change in exposure"; and again, after enumerating the exposure changes, the policy instructed that premium adjustments would be calculated "as of the effective date of the change." Nevertheless, the policy does not define the "effective date of the change" in exposure.
 

 The third enumerated exposure change was the "[rleplacement, deletion, or addition of any vehicle." Unlike the other listed exposure changes, the third change referred the policyholder to the definition of "your covered auto," a definition that USAA admits, standing alone, would seem to provide coverage for up to thirty days without an additional premium. Also, the third change reiterated that coverage must be requested within thirty days of acquisition of the new vehicle for coverage "to continue," suggesting that coverage of a new vehicle is included in the initial premium for a period of thirty days after its acquisition.
 

 Because this third change refers the policyholder to the "covered auto" definition, without indicating that an additional premium is owed for the thirty-day period after acquisition, a reasonable interpretation is that the effective date of the change in exposure occurs thirty days after a new vehicle's acquisition because the new vehicle is automatically considered a "covered auto" for the first thirty days after its acquisition.
 

 USAA interprets the "effective date of the change" in exposure as the date of acquisition of the new vehicle. In support of its interpretation, USAA argues that automatic coverage does not mean free coverage. USAA argues that automatic insurance clauses in automobile policies do not require an insurance company to provide free coverage during the period between acquisition of a "newly acquired vehicle" and the report of such acquisition to the insurer. See 8 Couch on Insurance, supra, § 117:7 ("Because of the fact that the premium rate may differ with respect to the new automobile, an automatic insurance clause will commonly make provision for the payment of an additional premium. Such an additional premium requirement is valid even though the policy was required by a Financial Responsibility Act, for such act does not require that the insurer automatically extend coverage to a substitute or newly-acquired vehicle without charging any additional premium for such coverage.").
 

 
 *1103
 
 However, this argument does not resolve the ambiguity created by USAA's policy language. The Anglums do not argue that the automatic coverage is free. Rather, they contend, and we agree, that the initial policy could be read as including coverage with USAA for up to thirty days after acquisition of a new vehicle, until notification to USAA of the new vehicle and the modification of the policy to include that vehicle, or until they insure the new vehicle with another insurer, whichever first occurs.
 

 Here, the Anglums' policy could have specified that the premium would be adjusted from the date of acquisition of the new vehicle, as have other policies with automatic coverage periods. See Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 668 (Ind.1997); Merchs. Mut. Cas. Co. v. Lambert, 90 N.H. 507, 11 A.2d 361 (1940). However, the policy did not provide specifically that an additional premium would be charged for any part of the thirty-day period before or after USAA is notified that the insured wishes to add the new vehicle to the policy.
 

 Because we have concluded the policy language is ambiguous, we must construe it in favor of the Anglums. See Compass Ins. Co. v. City of Littleton, supra, 984 P.2d at 613. Therefore, we conclude that the Anglums' initial premium paid for coverage for a newly acquired vehicle for up to thirty days until notification to USAA of acquisition of a new vehicle and the modification of the policy to include that vehicle, or until they obtained insurance with another insurer, whichever first occurred, and to that extent USAA has overcharged them.
 

 We note that our interpretation of the policy is consistent with USAA's treatment of policyholders. USAA argues that if a policyholder were to acquire a new vehicle, then wait thirty days before insuring the new vehicle with a different company, the thirty-day period that USAA insured the vehicle would result in an account receivable, upon which USAA could collect. However, USAA offered no evidence that it has ever attempted to recover on any such account receivable. See Nahring v. City & County of Denver, 174 Colo. 548, 484 P.2d 1235 (1971)(parties' conduct in interpreting a contract is proper guide to eliminating ambiguity and ascertaining parties' intent at time of contracting).
 

 Therefore, the judgment is reversed, and the case is remanded to the trial court for reinstatement of the Anglums' complaint and for further proceedings consistent with this opinion, including determination of whether class certification is appropriate.
 

 Judge WEBB and Judge HUME
 
 *
 
 concur.