Petitioners: **USAA CASUALTY INSURANCE COMPANY,**

v.

Respondents: **Sean ANGLUM and Gwen Anglum, on behalf of themselves and all others similarly situated.**

No. 04SC390.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2005.

William H. ReMine, Littleton, Johnson & Ayd, P.C., James D. Johnson, Patricia M. Ayd, Denver, for Petitioner.

The Carey Law Firm, Robert B. Carey, L. Dan Rector, Leif Garrison, Walter H. Sargent, a professional corporation, Walter H. Sargent, Colorado Springs, for Respondent.

Davis, Graham & Stubbs LLP, Andrew M. Low, Peter J. Krumholz, Denver, for Amici Curiae American Insurance Association and Property Casualty Insurers Association of America.

RICE, Justice.

Petitioner USAA Casualty Insurance Company (USAA) seeks review of a court of appeals' decision that its automobile policy is ambiguous with respect to when it can charge an adjusted premium for newly acquired vehicles. We hold that the policy unambiguously permits USAA to adjust its premium to reflect a newly acquired vehicle as of the date of acquisition of the vehicle. Accordingly, we reverse.

## I. Facts and Procedural History

In June 1998, Respondents Sean and Gwen Anglum (Insureds) obtained an automobile

insurance policy through USAA. At the time, the policy covered two cars, a 1992 Ford Escort and a 1998 Mazda pickup. In October 1998, Insureds purchased a 1999 Volkswagen Beetle; in May 2001, Insureds purchased a 2001 Suzuki Grand Vitara. On each occasion, Insureds notified USAA of their acquisition within ten to fifteen days. Following each notification, USAA amended the declarations page of Insureds' policy to include the new vehicle and to reflect an increased premium calculated from the day after the Insureds acquired each vehicle.

Based on the increase in their premiums, Insureds filed a proposed class action against USAA for breach of contract, violation of the Colorado Consumer Protection Act, breach of the covenant of good faith and fair dealing, and declaratory relief. In the complaint, Insureds argued that USAA improperly charged additional premiums for newly acquired vehicles from the date of acquisition rather than from thirty days after the date of acquisition.

USAA moved to dismiss the case under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted, arguing that the policy unambiguously permitted the calculation of premiums from the date of acquisition. At Insureds' request, the trial court allowed them a reasonable opportunity to conduct discovery before considering the merits of USAA's motion. After considering the parties' pleadings and discovery, the trial court granted USAA's motion to dismiss, holding that the policy unambiguously notified Insureds that they would be charged an additional premium for newly acquired vehicles calculated from the date of acquisition. Insureds appealed.

The court of appeals determined that "the policy [was] ambiguous as to the effective date of a change in exposure resulting from the acquisition of a new vehicle." *Anglum v. USAA Prop. & Cas. Ins. Co.*, 101 P.3d 1103, 1105 (Colo.App.2004) (selected for official publication). According to the court of appeals, a reasonable policyholder could have concluded that the "effective date of the

change" in exposure could occur either on the date of acquisition or thirty days from the date of acquisition. *Id.* As a result, the court of appeals construed the ambiguity in favor of the Insureds and reversed the trial court's decision, holding that USAA had overcharged Insureds for thirty days of coverage on each vehicle. *Id.* at 1106.

On rehearing, the court of appeals modified its opinion, holding that USAA could not charge an additional premium for newly acquired vehicles until after receiving notification of the acquisition or until thirty days after the date of acquisition, whichever came first. *Anglum v. USAA Prop. & Cas. Ins. Co.*, 101 P.3d 1103, 1107 (Colo.App.2004). Accordingly, the court held that USAA overcharged Insureds for ten days of coverage (the time after acquisition of the new vehicles but before Insureds notified USAA). *See id.* at 1104, 1107.

We granted certiorari to determine whether USAA's policy is ambiguous with regard to when USAA can charge a premium on a newly acquired vehicle.[1] We conclude that the policy unambiguously permits USAA to charge Insureds an additional premium from the date of acquisition. Therefore, we reverse the court of appeals' decision and remand with instructions to reinstate the trial court's ruling.

## II. Legal Considerations

The interpretation of an insurance contract is a question of law that we review de novo. *E.g., Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo.2005). In accordance with general rules of contract interpretation, we construe the terms of an insurance contract to promote the intent of the parties. *E.g., Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994). Accordingly, the policy must be enforced as written unless there is an ambiguity in the policy language. *E.g., id.*

A policy is ambiguous if it is susceptible on its face to more than one reason-

---

1. We granted certiorari on the following issue: Whether the court of appeals erred in holding an automobile insurer cannot adjust its premium to reflect a newly acquired vehicle as of the date of acquisition, but instead must insure the vehicle at the original premium rate from the date of acquisition until the date the insured notifies the insurer of the new vehicle.

able interpretation. *E.g., Cary,* 108 P.3d at 290. In determining whether there is an ambiguity in a policy provision, we evaluate the policy as a whole, using the generally accepted meaning of the words employed. *E.g., Houtz,* 883 P.2d at 1061. An ambiguity in the policy language is construed against the drafter and in favor of the insured. *E.g., Cary,* 108 P.3d at 290.

### III. Analysis

■ We begin our analysis with an examination of the scope of USAA's coverage. The "Definitions" section in USAA's policy defines "your covered auto" to include "vehicles acquired by [insured] or a family member during the policy period, beginning on the date [insured] or a family member becomes the owner." The policy explains in greater detail that:

> For such newly acquired vehicles, [USAA] will automatically provide the broadest coverage as is provided for any vehicle shown in the Declarations. If your policy does not provide Comprehensive and Collision coverages, [USAA] will provide each with a $250 deductible. However, [USAA] will provide these coverages for only 30 days after the date you or a family member becomes the owner of the vehicle. If you wish to continue any coverage beyond the 30–day period, you must request it prior to the end of the 30–day period.[2]

This provision, known in the insurance industry as an automatic coverage clause,[3] establishes that USAA will automatically cover newly acquired vehicles for up to thirty days, or until an insured procures permanent coverage, whichever comes first. Automatic coverage clauses are common practice in the insurance industry, and give insureds buying cars the convenience of having thirty days in which to secure permanent coverage for a vehicle, rather than having to arrange coverage before driving the vehicle off the lot.

*See* Russ & Segalla, *supra* note 3, at § 117:2. Though courts have not addressed this specific issue, whether an insurer may charge an adjusted premium for automatic coverage of a newly acquired vehicle from the date of acquisition appears to depend upon the terms of the policy involved. *Compare, e.g., Ga. Mut. Ins. Co. v. Criterion Ins. Co.,* 131 Ga. App. 339, 206 S.E.2d 88, 90 (1974) (in a case involving an insurance contract that did not provide for an adjusted premium calculated from the date of acquisition, "consideration for the automatic coverage during the 30–day period [was] the premium paid on the previously owned vehicle"), *with, e.g., Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 669 (in a case involving an insurance contract that expressly provided for an adjusted premium from the date that the insured purchased a new car, the insured did not qualify for automatic insurance where she did not notify the insurer and did not pay an adjusted premium within the specified grace period).

Insureds note, and USAA concedes, that the policy's automatic coverage clause is silent with regard to how the addition of a newly acquired vehicle affects the premium. Rather, the policy addresses the adjustment of premiums in a subsequent section containing "General Provisions":

**CHANGES**

A. The premium is based on information we have received from you and other sources. You agree to cooperate with us in determining if this information is correct and complete. *You agree that if this information changes,* or is incorrect or incomplete, *we may adjust your premiums accordingly during the policy period.*

B. *If, during the policy period, the risk exposure changes for any of the following reasons, the necessary premi-*

---

**2.** This language is from the USAA policy that was in effect in October 1998. The corresponding language from the policy that was in effect in May 2001 reads as follows:

> For such newly acquired vehicles, [USAA] will automatically provide the broadest coverages as are provided for any vehicle shown in the Declarations. If your policy does not provide Comprehensive and Collision coverages, [USAA] will provide each with a $250 deduct-

ible. However, [USAA] will not provide any coverage for more than 30 days after the date you or a family member becomes the owner of the vehicle. If you wish to continue any coverage beyond the 30–day period, you must request it prior to the end of the 30–day period.

**3.** *See* 8 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 117:1 (3d ed. Supp.1997).

*um adjustments will be made effective the date of change in exposure.* You agree to give us notice of such exposure changes as soon as is reasonably possible.

...

3. *Replacement, deletion, or addition of any vehicle.* You must request coverage for a newly acquired vehicle within 30 days from the date the vehicle is acquired if you wish to continue any coverage. See DEFINITIONS—**your covered auto.**[4]

...

C. We will make any calculations or adjustments of your premium using the applicable rules, rate, and form as of *the effective date of the change.*

(underline emphasis added).

Part A of the "Changes" provision notifies insureds that USAA may adjust the premium "during the policy period" if the information contained in the policy changes. Part B specifies that if the risk exposure changes, adjustments to the premium are effective the date of change in risk exposure. The "addition of any vehicle" results in a change in risk exposure. If an insured acquires a new vehicle, Part B requires the policyholder to notify USAA of any changes "as soon as is reasonably possible," but also clarifies that the addition of a vehicle need only be reported within thirty days if the insured wishes to continue coverage beyond thirty days. Because the "Changes" provision alludes to automatic coverage, it cross-references the definition of "your covered auto," where automatic coverage is explained in more detail. Finally, Part C provides that an adjustment of the premium will be effective the date of change in risk exposure. In sum, the "Changes" provision unambiguously permits USAA to increase Insureds' premium to reflect a newly acquired vehicle as of the date that Insureds acquire the vehicle.

Insureds argue, and the court of appeals agreed, that the "Changes" provision is ambiguous. In support of this assertion, Insureds first argue that the provision is ambiguous because it does not define the

"effective date of the change" in exposure. However, a term is not ambiguous solely because it is not defined in the policy. *Heller v. Fire Ins. Exch.,* 800 P.2d 1006, 1009 (Colo.1990). Here, when read in context, it is evident that the "effective date of the change" in exposure refers to the date of change in risk exposure discussed in Part B. As explained in the definition of "your covered auto," USAA becomes liable for newly acquired vehicles as soon as the insured or his family member becomes the owner. It is self-evident that once USAA becomes liable for a newly acquired vehicle, its risk exposure changes. For example, when Insureds replaced their 1992 Escort with a brand new Volkswagen Beetle, USAA's risk exposure increased significantly the moment Insureds became the owner of the new car. The phrase "effective date of the change" in exposure does not make this concept, or the provision in which it is contained, ambiguous.

Insureds also contend that the "covered auto" reference in the "Changes" provision introduces ambiguity into the policy because the definition of "your covered auto" says nothing about adjustments of the premium for additional vehicles. As a corollary, Insureds note that USAA easily could have provided for an adjusted premium in the definition of "your covered auto."

This argument is contrary to the rules of contract interpretation, which require us to construe the policy as a whole. *E.g., Houtz,* 883 P.2d at 1061. Whether USAA could have provided for an adjusted premium in the automatic coverage clause is irrelevant because USAA provided for an adjusted premium in the "Changes" provision. At the heart of this argument, then, is the implication that the "Changes" provision and the definition of "your covered auto" conflict on the subject of adjusted premiums. Presumably such conflict arises from the assumption that automatic coverage is somehow free coverage. However, the term "automatic" simply means "marked by action that is unpremeditated and that arises as a ...

---

**4.** The policy lists five additional reasons for a change in risk exposure, none of which is relevant here.

consequence of a given set of circumstances." *Webster's Third New Int'l Dictionary* 148 (1986). In this context, automatic coverage means that coverage arises as a consequence of the acquisition of a new vehicle. Nothing about the definition of "automatic" relates to the cost of coverage or adjusted premiums. There is some overlap between the two provisions because one of the enumerated reasons for a change in risk exposure—the addition of a new vehicle—implicates notification requirements set forth in the definition of "your covered auto." As a result, the policy necessarily cross-references the "Definitions" section. Accordingly, the provisions neither conflict nor render each other ambiguous.

Finally, Insureds argue, and the court of appeals held, that the phrase "to continue" in the "Changes" provision and the definition of "your covered auto," suggests that "coverage of a new vehicle is included in the initial premium for a period of thirty days after its acquisition." However, the phrase "to continue" refers solely to the extension of permanent insurance coverage after automatic coverage ends. It has no bearing on whether USAA may charge an adjusted premium from the date of acquisition of the vehicle, and does not render the "Changes" provision ambiguous.

Though we need not look beyond the plain language of the contract to support our conclusion that USAA's policy is unambiguous, we note that the interpretation advocated by Insureds and adopted by the court of appeals is inequitable because it has the effect of punishing those insureds who give early notification to USAA of newly acquired vehicles. Furthermore, because the court of appeals' holding creates an incentive for insureds to wait thirty days to notify USAA of newly acquired vehicles, it renders meaningless the requirement that insureds "give [USAA] notice of such exposure changes as soon as is reasonably possible."

Because the "Changes" provision unambiguously authorizes USAA to charge an increased premium for newly acquired vehicles from the date of acquisition, we reverse the court of appeals and remand with instructions to reinstate the trial court's order dismissing Insureds' complaint.