J-A12015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| ANDREW RUBINSTEIN AND JESSICA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| RUBINSTEIN, HIS WIFE, | : | PENNSYLVANIA |
| INDIVIDUALLY AND ON BEHALF OF | : | |
| ALL OTHERS SIMILARLY SITUATED | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | No. 1353 WDA 2021 |
| | : | |
| | : | |
| ERIE INSURANCE EXCHANGE | : | |

Appeal from the Order Entered November 8, 2021
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10858 - CD - 2019

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY McCAFFERY, J.:                    **FILED: MAY 25, 2022**

Andrew Rubinstein and Jessica Rubinstein, his wife, individually and on

behalf of all others similarly situated (collectively, "Appellants") appeal from

the November 8, 2021, order of the Indiana County Court of Common Pleas,

which granted Erie Insurance Exchange's ("Erie") motion for summary

judgment in this class action lawsuit concerning an automobile insurance

policy ("Policy").  As will be discussed in detail below, although Appellants

requested that their son be added to the Policy shortly after he turned 16

years old, he was not officially added until approximately 13 months later.

Erie charged Appellants for premiums related to that period.  Central to

_____

* Retired Senior Judge assigned to the Superior Court.

Appellants' dispute is their allegation that Erie acted improperly by retroactively charging increased premiums and backdating changes to the Policy where no claims were paid during the backdated period. Relatedly, they contend the trial court erred and abused its discretion by: (1) not determining there were ambiguities in the Policy language and that Erie may only charge increased premiums from the date a change was made; (2) applying a public policy analysis to their interpretation of the Policy; (3) basing its decision on assumptions and speculation; and (4) concluding that the Policy language permits Erie to backdate changes and charge a retroactively increased premium to the date within any prior policy period, including the inception of the Policy. Upon review, we affirm.

The trial court set forth the underlying factual history as follows:

In early April 2018, [Appellants] applied for and were issued an automobile insurance policy by [Erie]. [Appellants] obtained the Policy through one of [Erie]'s local agents, Thomas M. Frick Insurance Agency, LLC, ("Agent"), with an initial term from April 9, 2018 through April 9, 2019. The Agent is not a party to the instant action. [Appellants'] teenage son obtained his driver's license on April 24, 2018, and [they] maintain that they notified Agent of the same so that he could be added to the Policy. On or about July 16, 2018, [Appellants] informed [Erie] that . . . Andrew Rubinstein had been in an accident, and shortly thereafter, on July 19, 2018, . . . Jessica Rubinstein contacted [Erie], seeking to change their automobile coverage from limited tort to full tort. Approximately thirteen (13) months later, on or about May 17, 2019, [Appellants] became aware that their son had not been added to the Policy and contacted [Erie] regarding this issue. [Appellants] then received a letter from [Erie] with enclosed Amended Declarations for their Policy. Effective as of April 24, 2018, [Appellants'] son was added to the Policy, resulting in a retroactive premium increase of $1517.00. The Amended Declarations also included the full tort coverage for [Appellants']

son, effective as of July 19, 2018, resulting in a retroactive premium charge of $482.00.

Trial Ct. Op., 11/8/21, at 2.

It is not disputed that during the time period when Appellants' son was not officially added to the Policy, no claims were made or paid on the son's behalf or in relation to any conduct taken by him.

In May 2019, Appellants instituted this lawsuit by filing a class action complaint, and subsequently filed a second amended complaint in August 2019, raising four counts: (1) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL);[1] (2) breach of contract; (3) declaratory and injunctive relief pursuant to Pennsylvania's Declaratory Judgment Act;[2] and (4) unjust enrichment.

In June 2021, Erie filed a motion for summary judgment, alleging: (1) the Policy "expressly states that the Policy premium may be increased effective the date that a material change in the Policy occurs, such as the addition of a licensed driver to the insureds' household[;]" (2) the clear and unambiguous Policy terms require the Policy premium to change effective as of the date the changed occurred[;]" (3) Appellants "failed to establish that Erie ha[d] engaged in any unfair or deceptive trade practices[;]" (4) Erie "did not breach its contact with [Appellants], or engage in any unlawful conduct,

_____

[1] 73 P.S. § 201-1 *et seq.*

[2] 42 Pa.C.S. § 7531 *et seq.*

- 3 -

as the clear and unambiguous language of the Policy gives Erie the express authority to adjust [Appellants'] premium effective as of the date the change occurred;" and (5) because a valid and enforceable contract exists between the parties, Appellants "cannot establish that Erie was unjustly enriched by requesting and/or receiving the premium due under the Policy." Erie Insurance Exchange's Motion for Summary Judgment, 6/1/21, at 1-2.

Appellants filed a brief in opposition to Erie's motion for summary judgment, asserting: (1) Erie's "companywide policy of retroactively increasing premiums for backdated changes, while not paying related claims, defeats a significant purpose" of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL");[3] (2) certain language in the Policy was ambiguous; (3) Erie breached the Policy when, rather than canceling the Policy, it backdated the addition of the Appellants' son to the policy; and (4) Erie breached the Policy by backdating the addition of Appellants' son to the Policy within their previous policy period. Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, 6/29/21, at 3, 22-38. Appellants also suggested that the trial court should deny the motion for summary judgment, which sought declaratory and injunctive relief, because Erie breached and continued to breach its policies with Appellants and the proposed class members. *See id.* at 38.

---

[3] 75 Pa.C.S. § 1701 *et seq.*

- 4 -

On August 17, 2021, the court held argument on the matter. At that time, Appellants conceded that summary judgment was proper as to UTPCPL and unjust enrichment counts. *See* Order of Court, 11/8/21. On November 8, 2021, the court granted Erie's motion for summary judgment on the remaining counts. Appellants filed this timely appeal.[4]

Appellants raise the following issues for our review:

A. Whether the trial court abused its discretion and/or committed an error of law when granting Erie's [motion for summary judgment] based on the conclusion that the Policy language is not ambiguous?

B. Whether the trial court abused its discretion and/or committed an error of law when granting Erie's [motion for summary judgment] based on the conclusion that a company-wide practice of backdating policy changes and charging insureds retroactively increased premiums when no related claims were made is consistent with the intent and purpose of the [MVFRL]?

C. Whether the trial court abused its discretion and/or committed an error of law when granting Erie's [motion for summary judgment] based on assumptions and speculation rather than on facts of record?

D. Whether the trial court abused its discretion and/or committed an error of law when granting Erie's [motion for summary judgment] based on the conclusion that the form Policy language permits Erie to backdate changes to an insured's Policy and charge a retroactively increased premium when no related claims were made, to a date within any prior policy period – back to the inception of the Policy?

---

[4] Appellants complied with the trial court's directives to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on November 15, 2021. The court issued a Pa.R.A.P.(a) opinion on December 1, 2021, adopting its November 8, 2021, opinion, which corresponded with its order granting Erie's motion for summary judgment.

Appellants' Brief at 4-6 (some capitalization removed).

Appellants first argue the Policy is ambiguous based on language contained in two sections of documents. The first section at issue is in a document, titled "PENNSYLVANIA – NOTICE TO POLICYHOLDERS" which reads in relevant part as follows:

PLEASE NOTIFY YOUR AGENT WITHIN 60 DAYS IF:

• you change your address or marital status;

• you change the use of your vehicle or the distance you drive to or from work or school;

• your auto is being used as a public or livery conveyance to provide ridesharing services through a Transportation Network Service such as Uber or Lyft;

• you change the location where your vehicle is principally garaged;

• a licensed driver becomes a member of your household, even if they have their own auto and insurance;

• **a member of your household obtains a driver's license**;

• a licensed driver listed on your Declarations page is no longer a member of your household;

• you add or delete an auto, lienholder or other party having a financial interest in your vehicle;

• you modify the appearance or performance of your vehicle with customized equipment.

This information is needed to properly rate your policy. **Your policy will be amended to reflect the change**.

Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, 6/29/21, at Exhibit 1 (Pennsylvania – Notice to Policyholders at 1) (emphasis added).

Appellants also take issue with a section contained within pages 9-10 of the Policy under the main heading, "RIGHTS AND DUTIES-GENERAL POLICY CONDITIONS," and reads as follows:

HOW YOUR POLICY MAY BE CHANGED

Changes to Your Policy

This policy conforms to the laws of the state in which "you" reside at the time it is issued. If the laws of the state change, this policy will comply with those changes. "We" will give "you" the benefit of any change made by "us" if it does not require additional premium. This change will be effective as of the date "we" implement the change in "your" state.

"You" may change this policy by asking "us." Asking "our" Agent is the same as asking "us." "Your" request must contain enough information to identify "you." If "we" agree with "your" request, "we" will then issue a "Declarations." **If there is a change in the information used to develop the policy premium, "we" may adjust "your" premium during the policy period effective as of the date the change occurred**. Premium adjustments will be made using the rules and rates in effect for "our" use. Changes that may result in a premium increase or decrease during the policy period include, but are not limited to:

1. change to "your" address;

2. change to the location where the insured vehicle is principally garaged;

3. change in "your" marital status;

4. change to the distance "you" drive to or from work to school;

5. change in the use of "your" vehicle (i.e., business use of a vehicle);

6. addition or deletion of an "auto" or lienholder or another party having a financial interest in "your" vehicle(s);

7. **addition or deletion of a licensed driver in "your" household** regardless of whether they have their own "auto" and insurance; and

8. changes which modify the appearance or performance of "your" vehicle with customized equipment. . . .

Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment, 6/29/21, at Exhibit 37 (Erie Insurance Auto Insurance Policy at 9-10) (emphasis added).

Appellants contend that the Policy addresses two types of changes relevant to the case. They state the first is a "**change in circumstance**," which can be found in the first document when "Erie insureds experience a change in circumstance, the Policy directs them to notify their agent within 60 days because '[t]his information is needed to properly rate [their] polic[ies']' which will then '[ ] be amended to reflect the change.'" Appellants' Brief at 38 (reproduced record citation and italics omitted). Appellants allege the second document "discusses how a Policy may be changed when an insured experiences a change in circumstance." *Id.* at 39. Pointing to certain language in the document ("If there is a change in the information used to develop the policy premium, 'we' may adjust 'your' premium during the policy period effective as of the date the change occurred") which they term as "**changes to the Policy**," Appellants argue that once they "informed Erie that

their son obtained a driver's license, it was Erie's duty to change the Policy to reflect [Appellants'] change in circumstance." *Id.* at 40-42. This is the crux of Appellants' first argument – that the language is unclear as to whether the effective date is the date they experienced a change in circumstances or the date the Policy was changed. They further state that "Erie can only adjust [Appellants'] premium once it makes a change to their Policy." *Id.* at 42. Appellants suggest that while the trial court correctly observed that the phrase, "change to the policy," does not appear in the Policy, "there is no difference between the phrase used by [them] and the phrase in the Policy [because b]oth phrases mean the same thing – they relate to changes to the Policy." *Id.* at 44 (emphasis omitted). Relying on *Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87 (Pa. Super. 2015), for the principle that changes should not be made retroactively where no benefit could be derived as a result, Appellants claim that Erie should not be permitted to backdate Policy changes when no related claims were made. *See* Appellants' Brief at 46.

Additionally, Appellants contend the trial court "incorrectly applied a public policy analysis to [their] interpretation of the subject Policy language" by finding that it violated public policy and was unreasonable. *Id.* at 51. Appellants state that this was the basis for the court's finding that there was no ambiguity in the Policy language. Appellants assert the court should have first determined whether the Policy was clear and ambiguous, and then

considered if it violated a clearly established public policy rather than analyzing the two principles jointly. *Id.* at 51-52. Appellants aver that as a result, the trial court "created conflicting holdings[,]" in which it "effectively held that [Appellants] both did and did not disclose to Erie that their son obtained his driver's license." *Id.* at 52 (emphasis omitted). Appellants state there are several problems with the court's analysis – one, Erie was not forced to underwrite or subsidize anything because no related claims were made and two, if it really believed that Appellants did not notify Erie about their son, Erie should have canceled the policy instead of backdating it. *See id.* at 53.

Lastly, Appellants turn back to the last two lines of the first document ("This information is needed to properly rate your policy. Your policy will be amended to reflect the changes.") and allege that this section related to the changes in an insured's circumstances. Appellants' Brief at 59. Appellants state that Erie's reliance on *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058 (Colo. 2005), for the position that it is permitted to backdate the addition of Appellants' son and charge a retroactively increased premium, is misplaced. *See* Appellants' Brief at 60. Appellants state *Anglum* "illustrates how Erie should have drafted the relevant section of the subject Policy to avoid an ambiguity." *Id.* There, the policy referred to premium adjustments that would be made effective on the date of "change in exposure." *Id.* at 61. Appellants allege Erie should have used that same language to correct the ambiguity in the Policy at issue. *Id.*

When reviewing a trial court's decision to grant a motion for summary judgment, we adhere to the following standard of review:

> When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

*Gallagher v. Geico Indem. Co.*, 201 A.3d 131, 136-37 (Pa. 2019) (citations and quotation marks omitted).

Because Appellants' arguments concern their insurance policy with Erie, we note that in interpreting the language of an insurance policy:

> we must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured. In so doing, we must ascertain the intent of the parties as manifested by the terms used in the written insurance policy. Just as in statutory construction, [w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language. Importantly, however, provisions of insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws.

*Gallagher*, 201 A.3d at 137 (citations and quotation marks omitted).

Here, the trial court founded the following:

> [Appellants] suggest that an ambiguity exists in the "HOW YOUR POLICY MAY BE CHANGED" Section based on the language,

- 11 -

"'we' may adjust 'your' premium during the policy period effective as of the date the change occurred." According to [Appellants], it is unclear whether this language indicates the date that [Appellants] experienced a change in circumstances or the date that the Policy was changed.

Here, it is imperative to consider not only the entire sentence containing the phrase [Appellants] complain of, but also the Policy language in its entirety. The following sentences are relevant in determining whether an ambiguity exists:

> If there is a change in the information used to develop the policy premium, "we" may adjust "your" premium during the policy period effective as of the date the change occurred. Premium adjustments will be made using the rules and rates in effect for "our" use. Changes that may result in a premium increase or decrease during the policy period include, but are not limited to[. . . ]

The Policy clearly reads, "if there is a change in the information used to develop the policy premium, 'we' may adjust 'your' premium during the policy period effective as of the date the change occurred." Here, the term "change" cannot be read as a solitary term because a plain reading of the sentence connects it to "the information used to develop the policy premium". Should a change in the information to rate a policy occur, the Policy language states that the insurer may then "adjust" the premium, not "change" the premium. The phrase, "effective the date the change occurred", follows in the same sentence shortly after the phrase, "change in the information", thus the second use of the term "change" in the sentence can reasonably be interpreted as referring to the "change in the information". Accordingly, "effective as of the date" refers to the date of the change in information. Here, the applicable change in information that triggered [Appellants'] premium adjustment is listed as, "7. addition or deletion of a licensed driver in [']your['] household regardless of whether they have their own 'auto' and insurance." The addition of a licensed driver in [Appellants'] household occurred on April 24, 2018, the date that [their] son obtained his driver's license.

[Appellants] repeatedly use the terms "change in circumstance" and "change to the policy" to differentiate two purported types of "changes". Neither of these terms are

contained within the Policy. Rather, the actual Policy language contains the phrase "change in the information" with respect to certain events that could affect the Policy premium.

Despite the two above terms coined by [Appellants] being notably absent from the Policy language, [they] claim that the Section titled "HOW YOUR POLICY MAY BE CHANGED" applies to "changes made to a policy", and does not relate to a policyholder's "change in circumstances". Rather, [Appellants] contend, the "PENNSYLVANIA-NOTICE TO POLICYHOLDERS" applies to a "change in circumstances". In support of this argument, [Appellants] point to the following language contained in that Section:

PLEASE NOTIFY YOUR AGENT WITHIN 60 DAYS IF:

• a licensed driver becomes a member of your household, even if they have their own auto and insurance;

• a member of your household obtains a driver's license;

• a licensed driver listed on your Declarations page is no longer a member of your household;

[Appellants] contend that the difference in the language between the HOW YOUR POLICY MAY BE CHANGED Section and the PENNSYLVANIA-NOTICE TO POLICYHOLDERS is evidence that a difference also exists in the types of "changes". Specifically, the first Section references the "change" relevant in the instant matter as, "addition or deletion of a licensed driver in 'your' household regardless of whether they have their own 'auto' and insurance", and the second Section references the relevant "change" as, "a member of 'your' household obtains a driver's license". [Appellants] argue that a person is not "added" or "deleted" when moving in or out of a household, but rather "becomes" or "is no longer" a household member, reflecting a "change in circumstances". According to [Appellants,] the terms "addition" and "deletion" necessarily refer to "changes to the policy" because a driver would be "added" or "deleted" to a policy, not a household. [Appellants] further contend that if an insured experiences a "change in circumstances" then a "change to the policy" must occur to trigger the increased premium.

- 13 -

As discussed above, the terms "change in circumstance" and "change to the policy" are terms of [Appellants'] own invention. Even if the Court was to accept [Appellants'] attempt to create two independent types of "change", it cannot accept the contention that the phrase "addition or deletion of a licensed driver in your household", is a change to a policy versus a change in circumstances. Rather, it is one of the enumerated changes in information that are used to rate policies. Furthermore, "addition . . . of a licensed driver in 'your' household" and "member of 'your' household obtains a driver's license" can reasonably be interpreted to have the same meaning regardless of the different language used within the two Sections.

In order for an ambiguity to exist, the meanings proffered by the parties must both be reasonable. Acceptance of [Appellants'] interpretation of the Policy language would, in effect, lead to a finding that an insurer would bear the risk when a change in the information used to calculate a policy premium occurred, until and unless the insurer became aware of the change. Such a situation presents a public policy concern. Although public policy arguments generally tend to arise when a policyholder is attempting to invalidate an exclusion or other policy language in litigation with an insurer, the underlying applicable legislative concern of the [MVFRL] remains the same.

Pennsylvania courts have repeatedly explained that, "[t]he repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL." *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002). This public policy concern, "functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Burstein* at 208.

The Court cannot accept [Appellants'] interpretation of the Policy language because such acceptance would contradict public

> policy interests. Thus, the meaning proffered by [Appellants] is unreasonable and no ambiguity exists.

Trial Ct. Op., 11/8/21, at 6-10.

We agree with the court's well-reasoned analysis and affirm on that basis while adding these additional comments. It is evident Appellants created the two terms, "change in circumstance" and "change to the policy" — which are recited nowhere in the Policy — to support their contention that there is ambiguity in the Policy. However, the plain language of the Policy clearly provides that if there is change in the information used to develop the policy premium, Erie may adjust the premium during the policy period effective as of the date the change occurred. The word, "change," relates to the information being used to develop the premium and if a change occurs, *i.e.*, the addition of a licensed driver to the household, Erie is entitled to adjust the premium. Moreover, under the language of the Policy, the phrase, "effective the date the change occurred," clearly refers to the phrase, "change in the information." As such, Appellants' argument that the language is unclear as to whether the applicable date is when they experienced a change in circumstances or as opposed to when the Policy was changed has no merit. No ambiguity exists as the Policy clearly states the effective date concerns the date there was a "change in information" — as in the date Appellants' son obtained his driver's license and therefore, became an added licensed driver to their household.

Furthermore, Appellants' reliance on **Rourke** is misplaced. There, a panel of this Court reversed the trial court's order granting the insurance company's motion for judgment on the pleadings, but not because the policy's language was ambiguous. Rather, this Court reversed because the trial court's interpretation of its meaning was improper. The policy at issue defined "covered family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." **Rourke**, 116 A.3d at 91 (record citation omitted). This definition included a ward or foster child, but did not define the word, "ward." **Id.** The panel opined:

> We recognize that the term "ward" may carry with it potentially specialized legal meanings when defining legal duties among parties. However, these contexts, not being defined in the insurance policy, are not likely to be readily understood by the average insured, especially as the term is included expansively as part of the more familiar term "family member." Thus an insured, relying on a general understanding of the relational nature of a ward, may not be alerted of a need to take other legal action to extend coverage to a household member.

**Id.** at 95 (citation omitted). The panel then held that the appellant had sufficiently pled that the injured party was a ward of the appellant at the time of the loss, within the meaning of the policy, and therefore the trial court erred in granting the insurance company's motion. **Id.** at 96. As such, **Rourke** has no bearing on this case because it concerns different issues regarding an insurance policy.

Additionally, because the trial court herein properly found that there was no ambiguity in the Policy, we discern no error in the trial court applying a

public policy analysis to Appellant's interpretation of the subject Policy language as it was discussing applicable legislative concerns. As will be discussed below, acceptance of Appellants' interpretation would be contradictory to public policy interests.

Lastly, we decline to consider **Amglum**, which was cited by Appellants, as it is a non-binding Colorado case. **See Charlie v. Erie Ins. Exch.**, 100 A.3d 244, 254 n.11 (Pa. Super. 2014); **see also Commonwealth v. Nat'l Bank & Trust Co. of Cent. Pa.**, 364 A.2d 1331, 1335 (Pa. 1976) (noting, "it is a truism that decisions of sister states are not binding precedent on this Court[.]"). Accordingly, Appellants' first argument fails.

In their second argument, Appellants contend the court erred and abused its discretion when it granted Erie's motion for summary judgment on the basis that a company-wide practice of backdating policy changes and charging its insureds retroactively increased premiums when no related claims were made is consistent with the intent and purpose of the MVFRL. **See** Appellants' Brief at 62. Appellants state the purpose of the MVFRL is to lower the cost of insurance and Erie's policy is directly contrary to that purpose "because it increases the cost of insurance and does not provide any benefits as a result thereof." **Id.** They further alleged that "Erie knew with absolute certainty that there was no risk that it would have to pay a related claim." **Id.** at 64. Additionally, Appellants reiterate that once they notified Erie of the change, Erie was responsible for amending the Policy and it was a "breach of

contract and a violation of the intent and purpose of the MVFRL to expect

[them] to pay for Erie's internal processing delays when no related claims

were made." ***Id.*** at 65.

The Pennsylvania Supreme Court has previously explained the basis for

the MVFRL as follows:

> The repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No-Fault Act.

***Paylor v. Hartford Ins. Co.***, 640 A.2d 1234, 1235 (Pa. 1994).

> While we have repeatedly recognized the goal of cost containment, we have consistently observed that there is a balance to be struck between that goal and the remedial purpose of the MVFRL. . . .

***Safe Auto Ins. Co. v. Oriental-Guillermo***, 214 A.3d 1257, 1266 (Pa. 2019).

In ***Burstein***, ***supra***, the Pennsylvania Supreme Court upheld an

exclusion of an underinsured motorist (UIM) coverage as non-violative of

public policy, opining:

> In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy. This policy concern, however, will not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis

coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.

Here, voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. Most significantly, if this Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle. The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.

***Burstein***, 809 A.2d at 208 (footnote omitted).

Turning to the present matter, as the trial court noted above: "Acceptance of [Appellants'] interpretation of the Policy language would, in effect, lead to a finding that an insurer would bear the risk when a change in the information used to calculate a policy premium occurred, until and unless the insurer became aware of the change." Trial Ct. Op. at 9. Such a result is exactly what the ***Burstein*** Court was trying to avoid – a situation where insurance companies must bear the risk until they somehow discover a change in information regarding a policyholder. Like in ***Burstein***, such a result is untenable. ***Burstein***, 809 A.2d at 208. Accordingly, Appellants' second argument is unavailing.

Third, Appellants contends that the trial court erred and abused its discretion because it granted Erie's motion based on assumptions and

speculation rather than on facts of record. **See** Appellants' Brief at 65-69.

Before we may address the substance of this claim, we must determine

whether it was properly preserved. A review of the record reveals that

Appellants did not raise this issue in their Pa.R.A.P. 1925(b) concise

statement. It is well settled that if an appellant fails to raise an issue in a

court-ordered concise statement, it will result in waiver.[5] **See** Pa.R.A.P.

1925(b)(4)(vii); **see also Greater Erie Indus. Dev. Corp. v. Presque Isle**

---

[5] Appellants identified the following issues in their concise statement:

> 1. Whether the Trial Court abused its discretion or committed an error of law when granting [Erie's] Motion for Summary Judgment based on the conclusion that the Policy language is not ambiguous[?]
>
> 2. Whether the Trial Court abused its discretion or committed an error of law when granting [Erie's] Motion for Summary Judgment based on the conclusion that the form Policy language permits premium increases to be retroactively charged back to the date . . . Appellants experienced a change in their circumstances, rather than from the date [Erie] made a change to the Policy, where no covered claims were submitted[?]
>
> 3. Whether the Trial Court abused its discretion or committed an error of law when granting [Erie's] Motion for Summary Judgment based on the conclusion that a company-wide practice of backdating policy changes and charging its insureds retroactively increased premiums when no related claims were made or paid is consistent the intent and purpose of the [MVFRL?]

Concise Statement of Errors Complained of on Appeal, 11/23/21, at 1-2 (unpaginated).

*Downs, Inc.*, 88 A.3d 222, 223 (Pa. Super. 2014) (*en banc*). Accordingly, because Appellants did not properly preserve their third issue for our review, it is waived.

Lastly, and similar to their second issue, Appellants argues the court erred and abused its discretion when it granted Erie's motion for summary judgment based on the conclusion that the Policy language permits Erie to backdate changes to an insured's policy and charge a retroactively increased premium when no related claims were made to a date within any prior policy, including back to the inception of the Policy. *See* Appellants' Brief at 69. They state:

> Pursuant to the [t]rial [c]ourt's holding, if an insured first received an Erie policy 20 years ago, for example, and experienced a change in circumstance at some point during any prior policy period, Erie is permitted to backdate a policy change to anytime within that 20 year period and charge a retroactively increased premium for the entire time regardless of whether a related claim was made. However, Erie is specifically constrained by the subject Policy language from doing exactly that.
>
> The Policy states: "[i]f there is a change in the information used to develop the policy premium, 'we' may adjust 'your' premium during the policy period effective as of the date the change occurred."

*Id.* at 69-70 (emphasis omitted). Appellants contend that if the trial court's decision is upheld, "any insurer who offers coverage in Pennsylvania will be permitted to backdate policy changes, and charge their insureds retroactively increased premiums, back to the inception of their policies while not paying related claims." *Id.* at 73. Appellants conclude that if allowed, "it would result

- 21 -

in massive profits where an insurer knows with absolute certainty that it has no risk of having to pay a related claim." ***Id.***

In addressing Appellants' dispute, the trial court found the following:

[Erie] proffers a reasonable interpretation of these terms. If [Erie] was limited to only adjusting a premium in the policy period when a change in the information used to rate an insured's policy occurred or when a change in the type of coverage was effectuated, [Erie] would be potentially placed in the position of covering "unknown risks that insureds have neither discovered nor paid to insure". ***Burstein*** at 208. As discussed above, this is a situation that the legislature has aimed to avoid. For this reason, the [c]ourt finds no ambiguity as to [Erie]'s ability to adjust a premium based on an occurrence in a prior policy period.

Trial Ct. Op. at 10.

Again, we agree with the trial court's sound analysis as Appellants' argument does not persuade us otherwise. Moreover, it should be noted that what Appellants challenge did not actually happen in the present matter – meaning, Erie did not retroactively charge Appellants to the inception of the Policy. Rather, in adherence to the language of the Policy, Erie retroactively charged them from the date of the change in the information, as in the date their son became a licensed driver. As such, Appellants' final claim has no merit.

In sum, contrary to Appellants' arguments, there were no ambiguities in the Policy language at issue and therefore, we conclude the trial court did not err or abuse its discretion in granting Erie's motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  05/25/2022